BRUCE W EBERT, PH.D., J.D., LL.M (CSBN 151576)
HUBBARD & EBERT, LLP
300 Harding Blvd Ste 116
Roseville, CA 95678
Telephone 916-781-7875
Facsimile 916-781-2632

Attorney for PLAINTIFF
John P. Flaherty

**UNITED STATES DISTICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **JOHN P. FLAHERTY,**<br><br>**Plaintiff.**<br>vs.<br>**LINCOLN CITY POLICE DEPT**<br>**Traffic Officer Krause #12**<br>**Paul Tyler**<br>**SUTTER ROSEVILLE HOSPITAL**<br>**HERITAGE OAKS HOSPITAL**<br>**Dr. Leslie Hirschaut**<br>**Dr. Surendar Chima**<br>**CA DEPT OF JUSTICE DIVISION OF LAW ENFORCEMENT BUREAU**<br>**Steve Buford**<br>**DOES 1-25**<br><br>**Defendants.** | **Civil Action No.________________**<br><br>**PLAINTIFF'S VERIFIED COMPLAINT [JURY TRIAL DEMANDED]**<br><br>**1. Civil Rights Act 1983 Violation**<br>**2. Fourteenth Amendment Due Process Violation**<br>**3. Fourth Amendment Violation**<br>**4. Second Amendment Violation**<br>**5. Equitable Relief – Demand for Accounting**<br>**6. Assault**<br>**7. Battery**<br>**8. False Imprisonment**<br>**9. Intentional Infliction of Emotional Distress**<br>**10. Negligent Infliction of Emotional Distress**<br>**11. Gross Negligence** |

**JURISDICTION**

1. This Court has jurisdiction over PLAINTIFF'S federal claim pursuant to 28 U.S.C. § 1331 by operation of federal question jurisdiction and over the supplemental state law claim under § 1367.

2. This action arises under the United States Constitution, specifically the Second and Fourteenth Amendment, and under federal law, particularly 42 U.S.C. § 1983 in that PLAINTIFF alleges that Defendants deprived him of constitutional rights while acting under color of state law.

3. This Court is vested with authority to grant PLAINTIFF'S request for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 and under Federal Rule of Civil Procedure 57.

4. This Court is authorized to grant PLAINTIFF'S request for injunctive relief under 42 U.S.C. § 1983 and Federal Rule of Civil Procedure 65.

5. This Court can award PLAINTIFF damages pursuant to 28 U.S.C. § 1343.

6. This Court can award PLAINTIFF attorneys' fees and costs under 42 U.S.C. § 1988.

**VENUE**

7. Venue is proper pursuant to Local Rule 120 (d) in that all civil cases of every nature and kind cognizable in the United States for the Eastern District of California arising in Placer County shall be commenced in the United States District Court sitting in Sacramento, California.

8. Pursuant to 28 U.S.C § 1391 venue is proper in a judicial district where any defendant resides or where a substantial part of the events or omission occurred. In the instant case, the claims arose in this district, the parties reside in this district and the cause has the greatest nexus in this district. Therefore, venue is proper.

**PARTIES**

9. PLAINTIFF, John P. Flaherty, (hereafter "PLAINTIFF") is a seventy-one year old male, married for over thirty-nine years and a father of three. PLAINTIFF resides in an active adult retirement community located at Sun City Lincoln Hills, California. PLAINTIFF is

a retired physics and astronomy professor. PLAINTIFF taught for over 31 years and has a stellar record he can point to with pride.

10. PLAINTIFF is informed and believes and thereon alleges that at all times relevant to this complaint, Defendant, Lincoln City Police Department, is located at 770 7th Street Lincoln, California 95648.

11. PLAINTIFF is informed and believes and thereon alleges that at all times relevant to this complaint, Defendant, Officer D. Krause #12, is employed by the Lincoln City Police Department located at 770 7th Street Lincoln, California 95648.

12. PLAINTIFF is informed and believes and thereon alleges that at all times relevant to this complaint, Defendant, DOE 1, is employed by the Lincoln City Police Department located at 770 7th Street Lincoln, California 95648. DOE 1 accompanied Officer Krause to PLAINTIFF"S home on November 23, 2009.

13. PLAINTIFF is informed and believes and thereon alleges that at all times relevant to this complaint, Defendant, Steve Buford, is employed by the California Department of Justice Law Enforcement Gun Release Unit located at 1300 "I" Street Sacramento, California 95814-2919.

14. PLAINTIFF is informed and believes and thereon alleges that at all times relevant to this complaint, Defendant, Community Service Officer Paul Tyler, is employed by the Lincoln City Police Department located at 770 7th Street Lincoln, California 95648.

15. PLAINTIFF is informed and believes and thereon alleges that at all times relevant to this complaint, Defendant, Sutter Roseville Hospital, is located at One Medical Plaza Drive Roseville, California 95661.

16. PLAINTIFF is informed and believes and thereon alleges that at all times relevant to this complaint, Defendant, Heritage Oaks Hospital, is a full-service mental health facility located at 4250 Auburn Boulevard, Sacramento California.

17. PLAINTIFF is informed and believes and thereon alleges that at all times relevant to this complaint, Defendant, Surendar Chima M.D., is an attending physician employed at Heritage Oaks Hospital located at 4250 Auburn Boulevard, Sacramento California.

18. PLAINTIFF is informed and believes and thereon alleges that at all times relevant to this complaint, Defendant, Leslie Hirschaut M.D., is a physician employed at Heritage Oaks Hospital located at 4250 Auburn Boulevard, Sacramento California.

19. PLAINTIFF is ignorant of the true names and capacities of the Defendants sued herein as DOES 1 though 25, inclusive, and therefore PLAINTIFF sues such defendants by these fictitious names. PLAINTIFF will amend this complaint to allege their true names and capacities when ascertained.

## FACTS

20. Upon information and belief, PLAINTIFF alleges that on November 23, 2009 at or about 9:30 p.m., two Lincoln City Police officers in full uniform driving two clearly marked patrol cars arrived at PLAINTIFF'S residence in Sun City Lincoln Hills, an active adult retirement community.

21. PLAINTIFF alleges that the officers informed him that they were there due to a 911 call which they received from Pennsylvania, 2700 miles away, stating that PLAINTIFF was suicidal.

22. According to PLAINTIFF, he told both officers a number of times that he was fine; that there must be a misunderstanding; he was not suicidal and that a hold was not necessary.

23. PLAINTIFF alleges that the officers ignored his statements and demanded he follow them. Before leaving his home, PLAINTIFF tried to lock up his house but the officers took his keys away from him and told him they were going to conduct a search for firearms. PLAINTIFF informed the officers that his firearms were in a closed container under his bed.

24. PLAINTIFF alleges that he objected to the search and demanded a search warrant, but the officers ignored him, searched his home anyway and confiscated two firearms.

25. PLAINTIFF stated that he told the officers again and again that a hold was ridiculous, that there was a misunderstanding and that he was fine. According to PLAINTIFF, the officers ignored his statements and nonetheless escorted him out of his house, locked him in the back of their patrol car and drove him to the Emergency Room at Sutter Roseville Hospital.

26. Once in the patrol car, PLAINTIFF alleges that the officers informed him that Katherine Moore, PLAINTIFF'S Marriage and Family Therapist and Brad Harrison, PLAINTIFF'S friend, were sitting in a car across the street. Both of which stated and believed that PLAINTIFF was not suicidal.

27. PLAINTIFF recalls seeing one of his neighbors, Elaine Small, the President of the local Neighborhood Watch approach the police officers to determine what was happening. The police communicated something, but PLAINTIFF does not know what.

28. PLAINTIFF is very active in the Lincoln Hills community where he has earned a reputation as a community leader and public servant. He serves as President of Neighbors Indeed and Vice President of Lincoln Health Foundation where he conducts and coordinates all service work in the community. Recently, PLAINTIFF became the

recipient of Lincoln Hills Volunteer Award for his outstanding contributions to the Lincoln Hills community.

29. PLAINTIFF states that he felt embarrassed and humiliated as neighbors gathered and watched in shock as the police escorted him into their patrol car and drove him away as if he was some criminal. PLAINTIFF was deeply concerned about his reputation.

30. PLAINTIFF alleges that he arrived at Sutter Roseville's Emergency Room on or about 11 p.m. and remained there until about 3 a.m. PLAINTIFF states that he was seen by a medical doctor, but no mental health specialist for evaluation.

31. PLAINTIFF reports that he told Sutter Roseville staff the whole event was a mistake, not necessary, even ridiculous because he was not suicidal.

32. According to PLAINTIFF, at about 3 a.m. Sutter Roseville Hospital staff loaded and strapped him onto a gurney and into an ambulance truck and transported him to Heritage Oaks Psychiatric Hospital where he was admitted at about 5 a.m. PLAINTIFF alleges that he was furious and refused to sign anything or fill out any forms. He alleges that he told Heritage Oaks staff that this was a big mistake.

33. About one hour later, PLAINTIFF was taken to a holding and observation room, where a man ordered him to strip off all his clothes. PLAINTIFF states that he refused the strip search. Thereafter, according to PLAINTIFF, the man brought in another man and informed PLAINTIFF that they were going to strip all PLAINTIFF'S clothes off forcibly.

34. PLAINTIFF refused the forcible strip search, but was ignored. According to PLAINTIFF, the men proceeded to strip all his clothes off. Meanwhile PLAINTIFF alleges the trauma and humiliation was unbearable. He sunk to the floor in tears completely naked.

35. PLAINTIFF stated that the men left him in a vacant room and there appeared to be dirt or excrement on one wall, a missing window sill and a dilapidated bathroom.

36. PLAINTIFF alleges that he was later taken to a lock down ward in which all exit doors were locked and monitored by a staff member with a flashlight every 15 minutes. PLAINTIFF wanted to talk to a lawyer, but all his possessions had been stripped from him.

37. PLAINTIFF alleges that about 5 hours lapsed until he was finally evaluated by a mental health specialist.

38. PLAINTIFF alleges that his experience at Heritage Oaks Psychiatric Hospital has emotionally and physically scarred him as he vividly recalls severally mentally impaired residents running around naked, singing at the top of their lungs during the night, and others in catatonic state.

39. PLAINTIFF alleges that he has since had to visit with a psychologist and has been diagnosed with post traumatic syndrome.

40. PLAINTIFF alleges that no psychiatric evaluation was conducted by any clinician to determine whether he was a danger to himself or others. Nonetheless, employees at Heritage Oaks Hospital locked him in a vacant observation room which has one large window so that he could be monitored and thereafter transferred him to a room which included twenty or so severely mentally ill patients. PLAINTIFF alleges that the experience was traumatizing and that he felt very afraid.

41. PLAINTIFF alleges that it was not until 11 a.m. that he was finally evaluated by a psychiatrist, Dr. Leslie Hirschaut. PLAINTIFF reports that he told Dr. Hirschaut that was not suicidal. He told her to conduct whatever exams necessary.

42. PLAINTIFF alleges that Dr. Hirschaut returned at 11:00 a.m. the next day, November 24, 2009, and deemed him not suicidal, releasing him from Heritage Oaks Hospital.

43. PLAINTIFF states that he continues to suffer from post traumatic stress syndrome and has many nightmares and flashbacks regarding the events discussed above, beginning with the police's arrival at his residence and subsequent admission at Heritage Oaks Psychiatric Hospital.

44. On or about January 13, 2010, PLAINTIFF filed an application to have his guns returned, but Steve Buford, Assistant Chief of Bureau of Firearms, refused to return the guns in a letter dated December 28, 2009 based on the fact that PLAINTIFF had a 5150 hold on his record.

45. PLAINTIFF reports that he has never had a history of mental health disorders or problems with the law. PLAINTIFF is informed and believes that he now has a 5150 hold on his criminal record preventing him from seeking employment as a teacher or volunteer work at Lincoln Hills.

46. PLAINTIFF alleges that he has taught for over 31 years without problems or discipline of any type. PLAINTIFF alleges that he is prohibited from volunteering at the Lincoln Hills School Program for retired teachers as a result of the 5150 hold on his record.

47. On or about January 13, 2010, PLAINTIFF alleges that he sent a letter to Steve Buford and Paul Tyler of Lincoln City Police Department, stating that the 5150 hold was erroneous and again requested return of his firearms.

48. Months later, on April 16, 2010, PLAINTIFF received all the original documents he sent to the police department on Jan 13, 2010 along with a blank form titled "Law Enforcement Gun Release Application' with no written directions or explanation.

49. PLAINTIFF alleges that he never received notice as to his criminal record nor notice or hearing regarding the confiscated firearms.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### Civil Rights Act 1983

50. PLAINTIFF states a claim under 42 U.S.C. §1983 alleging that Defendants deprived him of rights, privileges and immunities secured by the Constitution while acting under color of state law. PLAINTIFF reports the violation was committed by the government, namely the Lincoln Police Department officers, agents, employees and those acting on its behalf and direction such as Sutter Roseville Hospital and Heritage Oaks Hospital.

51. Defendants, Lincoln Police Department officers, exercised power possessed by virtue of state law, specifically Section 5150 of the California Welfare and Institutions Code. However, Defendants abused their discretion by failing to properly obtain probable cause for a 5150 hold and further by failing to properly evaluate the requisite conditions for a 5150 hold. PLAINTIFF alleges that the Lincoln City Police Department was the moving force behind these deprivations.

52. PLAINTIFF has requested the police report regarding this incident on four different occasions to no avail.

53. Private actors are also liable who act under color of state law. Here, Sutter Hospital and Heritage Oaks Hospital were directed to provide medical care to a detainee under the color of state law. PLAINTIFF alleges that these private actors failed to promptly and properly access and evaluate PLAINTIFF'S mental state despite his repeated pleas to do so.

54. PLAINTIFF alleges that Defendants' unreasonable and prolonged assessment caused PLAINTIFF a severe deprivation of guaranteed civil liberties granted under the United States Constitution, causing PLAINTIFF to suffer emotional and physical trauma and distress.

55. PLAINTIFF alleges that the Lincoln City Police Department failed to train its employees on proper assessment of Section 5150, 72 hour holds, and such failure amounted to a deliberate indifference to an obvious need to secure PLAINTIFF'S Constitutional right to liberty and due process as discussed below.

56. WHEREFORE, PLAINTIFF prays judgment against Defendant, and each of them, as set forth below.

**SECOND CAUSE OF ACTION**

**Fourteenth Amendment Due Process Violation**

57. The allegations of paragraphs enumerated above are re-alleged, incorporated and referenced as though set forth herein.

58. The procedural portions of the Due Process Clause forbid depriving a person of life, liberty or property without a fair process. Procedural safeguards, namely notice and a hearing are available whenever a government agency seriously deprives an individual of life, liberty, or property. Again, at the very least, this requires notice of the government's proposed action and an opportunity to present objections to an unbiased decision-maker.

59. Intentional deprivation of these rights without a fair process violates the procedural due process clause of the Fourteenth Amendment.

60. PLAINTIFF was deprived of his liberty interest when the Lincoln City Police Department detained him against his will without probable cause and proper evaluation as required under the California Welfare and Institutions Code Section 5150.

61. To date, the Lincoln City Police Department has been unresponsive in providing proof of documentation as to the nature of the 911 call they received and the proper assessment and evaluation used to determine harm to self, others or mental disorder.

62. PLAINTIFF requested documentation on four different occasions to no avail. First, PLAINTIFF tried to obtain the police report with the Lincoln Police Department Clerk; second, by writing a letter to the Chief of Police; third, by visiting with Officer Krause; fourth, by again contacting the Clerk. All parties have failed to release the report.

63. PLAINTIFF believes that Defendants used discriminatory and selective enforcement, namely his elderly age and the fact that he resides in an adult retirement community to determine his mental health.

64. As a result, PLAINTIFF was deprived of his Fourth Amendment right to be free from government search and seizure as discussed below.

65. Moreover, PLAINTIFF was deprived of notice and a fair trial on the issue of his confiscated guns.

66. Once a 5150 hold is certified, the California Department of Justice requires a firearm prohibition form be submitted for the person placed on the hold. The prohibition is maintained for five years. PLAINTIFF is informed and believes and thereon alleges that such form was never submitted.

67. The facility is also suppose to inform the person that he or she may request a hearing from a court for an order permitting the person to own, possess, control, receive or purchase a firearm. PLAINTIFF alleges that he was never informed.

68. The facility is to provide the person with a form for a request for a hearing. PLAINTIFF alleges that he was never provided any form. Where a person requests a hearing at the time of discharge, the facility shall forward the form to the superior court unless the person states that he or she will submit the form to the superior court.

69. Proper procedure also requires the facility to inform the person subject to this subdivision that he or she is prohibited from owning, possessing, controlling, receiving, or purchasing any firearm for a period of five years. PLAINTIFF alleges that he was never informed and thus his property was confiscated without procedural due process safeguards.

70. WHEREFORE, PLAINTIFF prays judgment against Defendant, and each of them, as set forth below.

## THIRD CAUSE OF ACTION

### Fourth Amendment Violation

71. The allegations of paragraphs enumerated above are re-alleged, incorporated and referenced as though set forth herein.

72. The Fourth Amendment provides the right of people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures and holds that no warrant shall issue but upon probable cause, describing with particularity the place to be searched and the persons or things to be seized. The Fourth Amendment applies to the states via the Incorporation Doctrine.

73. PLAINTIFF alleges that the Lincoln City Police constitutes government action in that the officers are publicly paid police. Moreover, the officers intruded into an area where PLAINTIFF has a reasonable expectation of privacy: his person and home.

74. PLAINTIFF alleges that the search involved the officers' exercise of control over PLAINTIFF'S property in that they searched his home and seized his firearms without probable cause and a warrant. Defendants failed to access the trustworthiness, veracity of the 911 caller. Moreover, PLAINTIFF believes and is informed and thereon alleges that the police may have instructed the caller as to the appropriate terms or statements to use to warrant a 5150 hold.

75. PLAINTIFF alleges that the seizure involved the officers' exercise of control over PLAINTIFF'S person in that they detained him for hours without probable cause and a warrant.

76. WHEREFORE, PLAINTIFF prays judgment against Defendant, and each of them, as set forth below.

**FOURTH CAUSE OF ACTION**

**Second Amendment Violation**

77. The allegations of paragraphs enumerated above are re-alleged, incorporated and referenced as though set forth herein.

78. PLAINTIFF alleges that he has a second amendment right to bear arms and that his right to bear arms was deprived in that the officers confiscated his firearms without a warrant and without procedural due process as discussed above and below.

79. WHEREFORE, PLAINTIFF prays judgment against Defendant, and each of them, as set forth below.

## FIFTH CAUSE OF ACTION

### Equitable Relief – Demand for Accounting

80. The allegations of paragraphs enumerated above are re-alleged, incorporated and referenced as though set forth herein.

81. PLAINTIFF is informed and believes and therefore alleges that Defendants owe him a duty to exercise particular care in handling the confiscated firearms and to account for all procedures given to him.

82. PLAINTIFF is informed and believes and therefore alleges that despite several and repeated requests by PLAINTIFF to Defendants for a full and complete accounting of his firearms and details of the 911 call. Defendants have never accounted for the police report or the firearms.

83. PLAINTIFF is informed and believes and therefore alleges that such accounting will reveal mistakes, misinformation, and discrepancies regarding how the 911 call was received and how the firearms were taken, processed and handled with regard to PLAINTIFF'S right to sign-off on the matter with an opportunity for notice and a hearing.

84. PLAINTIFF is informed and believes and thereon alleges that a full and complete accounting is necessary to illuminate the full import of Defendants' misconduct related to this complaint, that without such an accounting PLAINTIFF has no way to ascertain the total harm caused him by Defendants.

85. PLAINTIFF is informed and believes and thereon alleges that an order from the Court is necessary to compel Defendants to provide such an accounting.

86. WHEREFORE, PLAINTIFF prays judgment against Defendant, and each of them, as set forth below.

## SIXTH CAUSE OF ACTION

### Assault

87. The allegations of paragraphs enumerated above are re-alleged, incorporated and referenced as though set forth herein.

88. PLAINTIFF alleges that Defendants' act of placing him in a psychiatric ward with several severely mentally ill patients caused reasonable apprehension in PLAINTIFF of immediate harmful or offensive contact to the PLAINTIFF'S person.

89. Defendant intended to place PLAINTIFF in the ward and knew with substantial certainty that PLAINTIFF would be surrounded by severally mentally ill residents.

90. PLAINTIFF alleges that he neither has a mental health disorder nor a history of suicidal thoughts or actions.

91. But for Defendants decision to admit PLAINTIFF without first psychologically and psychiatrically evaluating him, PLAINTIFF would not have suffered fear of imminent harmful or offensive contact to his person and thereafter post traumatic stress syndrome.

92. WHEREFORE, PLAINTIFF prays judgment against Defendant, and each of them, as set forth below.

## SEVENTH CAUSE OF ACTION

### Battery

93. The allegations of paragraphs enumerated above are re-alleged, incorporated and referenced as though set forth herein.

94. The strip search conducted on PLAINTIFF by Defendant, Heritage Oaks Hospital, constituted harmful, offensive contact to the PLAINTIFF'S person.

95. Defendant intended, knowing with substantial certainty that offensive contact would occur when he ignored PLAINTIFF'S repeated objections to a forcible search.

96. As a cause of Defendant's forcible strip search of PLAINTIFF'S person, PLAINTIFF was both physically and emotionally scared by the harmful and offensive contact.

97. PLAINTIFF now suffers nightmares due to the traumatic events which occurred while admitted at Heritage Oaks Psychiatric Ward.

98. A reasonable person with ordinary sensibilities would consider the contact PLAINTIFF received harmful and offensive, causing PLAINTIFF flashbacks and nightmares.

99. WHEREFORE, PLAINTIFF prays judgment against Defendant, and each of them, as set forth below.

## EIGHTH CAUSE OF ACTION

### False Imprisonment

100. PLAINTIFF hereby restates and incorporates by reference all of the above paragraphs as though set forth in full herein.

101. PLAINTIFF alleges that Defendants' action of confining and restraining PLAINTIFF to a bounded area in a Lincoln City Police patrol car, and Heritage Oaks Psychiatric ward without consent injured PLAINTIFF.

102. PLAINTIFF reports he was aware of the confinement and emotionally and physically injured by it, requiring visits to a psychologist.

103. Defendants knew with substantial certainty that PLAINTIFF disagreed with the confinement, stated it was unnecessary and nonetheless Defendants ignored PLAINTIFF.

104. But for, Defendant's actions PLAINTIFF would not have suffered emotional and physical harm.

105. WHEREFORE, PLAINTIFF prays judgment against Defendant, and each of them, as set forth below.

## NINETH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

106. PLAINTIFF hereby restates and incorporates by reference all of the above paragraphs as though set forth in full herein.

107. The conduct, of restraining PLAINTIFF and admitting him against his will into a psychiatric ward given his healthy mental health background, was extreme and outrageous and an abuse of PLAINTIFF'S person.

108. The conduct of confining an otherwise mentally healthy, stable person in a psychiatric unit was certain to cause PLAINTIFF emotional trauma.

109. PLAINTIFF has applied to tutor Physics at the Lincoln High School and is deeply disturbed that a background check is going to incorrectly indicate that he is mentally unstable, thereby preventing him from obtaining gainful employment and volunteer work at local schools.

110. WHEREFORE, PLAINTIFF prays judgment against Defendants, and each of them, as set forth below.

## TENTH CAUSE OF ACTION

### Negligent Infliction of Emotional Distress

111. The allegations of paragraphs enumerated above are re-alleged, incorporated and referenced as though set forth herein.

112. Defendants have a duty of care not to subject others to emotional distress which would foreseeably cause them physical injury through physical impact or threat of impact.

113. Defendants knew or should have known that its failure to exercise due care in promptly and properly evaluating and accessing PLAINTIFF'S mental and emotional health prior to admitting him overnight at a psychiatric ward could cause a great injustice to PLAINTIFF and cause him emotional trauma.

114. But for Defendants ignoring PLAINTIFF'S repeated pleas that he was not suicidal, PLAINTIFF would not have suffered the emotional distress caused by a forcible strip search and a night surrounded by severally mentally ill residents.

115. Defendants' conduct led to PLAINTIFF'S repeated nightmares reliving the incident.

116. As a proximate result of Defendant's acts and omissions as alleged in this Complaint, PLAINTIFF suffered embarrassment, anxiety, humiliation and severe emotional and physical distress, all to his damage in the amount according to proof.

117. WHEREFORE, PLAINTIFF prays judgment against Defendant, and each of them, according to proof.

## ELEVENTH CAUSE OF ACTION

### Gross Negligence

118. The allegations of paragraphs enumerated above are re-alleged, incorporated and referenced as though set forth herein.

119. Defendants owed PLAINTIFF a duty to prevent unreasonable risk of harm. A duty is owed to all members of society.

120. Absent a special relationship, the standard of care owed to others is one of reasonableness.

121. Here, the Defendants are professionals and thus the standard of care is that of knowledge, skill or a member of the profession in the same or similar community.

122. PLAINTIFF alleges that Defendants breached their duty by failing to confirm to the standard of care in that they acted grossly negligent by not using the knowledge of proper evaluation and assessment of PLAINTIFF'S mental health.

123. But for Defendants' gross negligence in failing to properly and promptly examine PLAINTIFF, PLAINTIFF'S injuries would not have occurred.

124. Defendant's omissions were a substantial factor in causing PLAINTIFF'S injury.

125. As a result, PLAINTIFF has suffered and continues to suffer damages in the form of physical injury or property damage.

126. WHEREFORE, PLAINTIFF prays judgment against Defendants, and each of them, according to proof.

**REQUEST FOR RELIEF**

WHEREFORE, the PLAINTIFF respectfully requests relief as follows:

1. Removal of 5150 from PLAINTIFF'S record, all rights and privileges restored
2. Non-economic damages for pain and suffering
3. Emotional stress damages according to proof at trial
4. For costs of suit and attorneys fees incurred in this matter
5. An order of the Court requiring a full and complete, sworn accounting regarding the nature of the 911 call, 5150 determination and procedural process used in the continued withholding of PLAINTIFF'S firearms

6. Return of PLAINTIFF'S firearms, specifically one Remington Magnum 870 shotgun serial number W199655M and one Russian 7.62 mm bolt-action rifle, serial number 38243

7. Such other and further relief as the court deems just and proper

DATED: January 13, 2011



BRUCE W EBERT, PH.D., J.D., LL.M (CSBN 151576)
HUBBARD & EBERT, LLP
300 Harding Blvd Ste 118
Roseville, CA 95678
Telephone 916-781-7875
Facsimile 916-781-2632

Attorney for Plaintiff
John P. Flaherty

## VERIFICATION

I, John P. Flaherty, am the PLAINTIFF in this case. My attorney has provided me with an opportunity to review this complaint and comment as to its contents. I attest under oath that all the facts alleged herein are accurate and complete and that I have verified all allegations. My signature below verifies that I find this complaint an accurate representation of the events giving rise to this action.

Date: January 13, 2011

JOHN P. FLAHERTY